## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DOMINIC PERRY, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.   2:23-cv-884 |
| | ) | |
| vs. | ) | |
| | ) | |
| JMO ROLL-OFF, MARYLOU MOORE, | ) | |
| AND BARRY MOORE, | ) | |
| *jointly and severally*, | ) | |
| | ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Dominic Perry by and through the undersigned counsel, now files the within Complaint in Civil Action against JMO Roll-Off, Marylou Moore, and Barry Moore, averring as follows:

### PARTIES

1.     Plaintiff, Dominic Perry (hereinafter, "Plaintiff") is an adult individual who resides at 214 Pinecastle Avenue, Pittsburgh, Pennsylvania 15234.

2.     Defendant, JMO Roll-Off (hereinafter, "JMO"), is a Pennsylvania Domestic Limited Liability Company that provides infrastructure and services to the public, including roll-off dumpsters, debris hauling, portable toilets, and general waste management.  JMO has a principal place of business located at 1475 Network Drive, Canonsburg, Pennsylvania 15317.

3.     Defendant, Marylou Moore, (hereinafter "Mrs. Moore") is the wife of Barry Moore, and one of two legal owners of JMO.

4.    Defendant, Barry Moore (hereinafter "Mr. Moore") is the husband of Marylou Moore, and one of two legal owners of JMO (collectively, JMO, Mrs. Moore and Mr. Moore are referred to as "Defendants").

## JURISDICTION AND VENUE

5.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (hereinafter, the "FLSA").

6.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101, *et seq.*, (hereinafter, the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "WPCL"), and asserts Pennsylvania state common law claims for breach of contract and unjust enrichment.  Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory and common law claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.    Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the claims averred herein occurred in City of Pittsburgh, Allegheny County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania.  Therefore, venue is appropriate pursuant to 28 U.S.C. § 1391(b).

8.    This Court has personal jurisdiction over Defendants because they routinely and regularly conduct business in the Commonwealth of Pennsylvania, routinely and regularly solicit business in Pennsylvania, and JMO is incorporated in Pennsylvania.  Further, as averred more fully

below, Defendants violated numerous statutory provisions of Pennsylvania law and Pennsylvania common law, and all the events giving rise to their unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at bare minimum, may exercise personal jurisdiction over the Defendants because they have the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

9.    This Court may therefore properly maintain personal jurisdiction over Defendants in light of their extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

10.    At all times relevant hereto, Mr. Moore and Mrs. Moore were acting as owners of JMO and, either individually or collectively, personally committed, effectuated, and/or engaged in the following conduct on behalf of JMO.

11.    On May 2, 2022, Plaintiff commenced his employment with Defendants as a Driver, delivering and collecting roll off dumpsters and portable toilets, until his termination from employment on September 12, 2022.

12.    As part of his employment contract with Defendants, Plaintiff was compensated at a rate of $1,200.00 per week for forty (40) hours of work or, in other words, $30.00 per hour (hereinafter, the "Employment Contract").

13.    In recording the hours that he worked for Defendants, Plaintiff utilized a mobile app that was designed for truck routes, wherein Plaintiff would "clock in" and "clock out" at the beginning and end of each route(s), his break times, and the work shift in general.

3

14.     Further, the hours that Plaintiff worked for Defendants were recorded via email on its internal computer servers and text message thread.

15.     In the course of his four (4) months of employment with Defendants, Plaintiff worked between forty-one (41) to fifty (50) hours per week for approximately five (5) workweeks.

16.     Otherwise, during this same timeframe, Plaintiff worked over fifty (50) hours per week for approximately eight (8) workweeks.

17.     At all times relevant hereto, Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA and the MWA.  Specifically, Plaintiff's duties clearly demonstrate Plaintiff's non-exemption status which included, but were not limited to, exclusively intrastate deliveries and which required Plaintiff to physically clean the portable bathrooms Plaintiff was transporting.

18.     As such, for the above-mentioned workweeks, Defendants were obligated to pay Plaintiff one hundred and fifty percent of his standard wage of $30.00 per hour, or $45.00 per hour, for each and every hour that Plaintiff worked in excess of forty (40) hours per week.

19.     However, during the five (5) weeks (approximately) in which Plaintiff worked between forty-one (41) to fifty (50) hours, Defendants devised and implemented a policy in which it would only pay Plaintiff his standard wage of $30.00 per hour (hereinafter, the "41 to 50 Hour Workweek Overtime Deduction Practice").

20.     Moreover, during the eight (8) weeks (approximately) in which Plaintiff worked over fifty (50) hours, Defendants devised and implemented a policy in which it would only pay Plaintiff his standard rate of $30.00 per hour for hours up to and including fifty (50)  hours and then at a reduced rate of $25.00 per hour for any and all hours above and beyond fifty (50)  hours (hereinafter, the "50 Plus Hour Workweek Overtime Deduction Practice").

21.    On his final day of employment, September 12, 2022, Plaintiff worked for twelve (12) hours.  However, as reflected in Plaintiff's final paycheck, Defendants failed to pay Plaintiff any wages, much less at the overtime rate of pay—to the extent it was applicable—for these hours (hereinafter, the "Final Paycheck Time Deduction Practice").

22.    To date, Defendants have not compensated Plaintiff at the overtime rate of pay for hours that Plaintiff worked above and beyond forty (40) hours a week as calculated and recorded in accordance with its unlawful time keeping practices, i.e., the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Pay Time Deduction Practice.

23.    Ultimately, in effectuating the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Paycheck Time Deduction Practice, Defendants violated the FLSA, the MWA, and the WPCL and, furthermore, breached its Employment Contract with Plaintiff and was the recipient of unjust enrichment.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES IN
## VIOLATION OF THE FLSA
## 29 U.S.C. § 201, *et seq.*

24.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

25.    Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.  Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay. 29 U.S.C. § 207.

26.    The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

27.    In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself and, additionally, the corporate officers of the corporate entity. See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

28.    Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

29.    First, Defendants extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates. Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants. At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

30.    At all times pertinent hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

31.    As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

32.    As such, Defendants are an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

33.    Second, the Defendants specifically exerted influence and control over the terms and conditions of Plaintiff's employment, including the compensation structure and hours Plaintiff

was expected to work.  Defendants further possessed the ability to hire and fire employees of JMO and to significantly affect and/or alter the terms and conditions of their employment, including Plaintiff.

34.     Moreover, the Defendants personally devised and implemented the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Pay Time Deduction Practice.

35.     Therefore, the Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

36.      Given Mr. Moore and Mrs. Moore's personal role in JMO's unlawful workplace wage practice, delineated above, which they did while acting within the scope of their employment as owners of JMO, the Mr. Moore and Mrs. Moore are individually and collectively liable for the corresponding violations of the FLSA.

37.     Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00. *Id.*

38.     Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

39.     In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

7

40.     Upon information and belief, Defendants purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within Pennsylvania.

41.     Additionally, as part of its routine business practice, Defendants transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

42.     Therefore, Defendants regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

43.     Upon information and belief, Defendants provided the above-mentioned infrastructure and services in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, Defendants had an annual dollar volume of sales in excess of $500,000.00.

44.     Therefore, Defendants satisfy the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

45.     Accordingly, Defendants are an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

46.     Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.  29 U.S.C. § 203(e)(1).

47.     To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

48.     In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

49.     "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id*. (internal citation and quotation marks omitted).

50.     At all times relevant hereto, Defendants possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to provide trucking services and deliver or collect roll off dumpsters and portable toilets.

51.     Defendants also exerted significant control over the manner in which Plaintiff performed his workplace duties. Defendants delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated the speed in

9

which Plaintiff was to complete his tasks, and designated the routes through which Plaintiff was to perform his above-mentioned job duties.

52.    Plaintiff had no personal financial investment in Defendants' operations.  Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill.

53.    Further, Plaintiff did not utilize his own equipment while working for Defendants, and Defendants supplied Plaintiff with all the supplies and equipment necessary for him to perform his job duties, including the truck that Plaintiff drove.

54.    In performing his job duties, Plaintiff did not utilize any "special skill" akin to that of a licensed professional.

55.    Nonetheless, the workplace duties to which Plaintiff completed were an integral component of Defendants' day-to-day operations, which primarily consisted of delivering and/or collecting roll off dumpsters and portable toilets.

56.    Finally, Plaintiff was completely dependent on Defendants to perform his job duties because Defendants had the clientele, licensure, and wherewithal necessary to bestow Plaintiff with work.

57.    Plaintiff is thus an "employee" for purposes of the FLSA.

58.    Ultimately, given the joint status of Defendants as an "employer" that is an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime rate of pay requirements of the FLSA.

59.    That is, at all times hereto, Defendants mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period. 29 U.S.C. § 207(a)(1).

60.    As previously averred in this Complaint, from May 2, 2022, to September 12, 2022, Plaintiff worked approximately fourteen (14) weeks where JMO was legally mandated to compensate Plaintiff at the overtime rate of pay.

61.    However, during the above-mentioned workweeks, Defendants explicitly refused to pay Plaintiff overtime pay for the overtime hours that he worked.

62.    Instead, as averred above, Defendants implemented the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Pay Time Deduction Practice and effectuated schemes that failed to pay Plaintiff any overtime for the number of hours that Plaintiff worked above and beyond 40, on a weekly basis.

63.    Therefore, Defendants violated 29 U.S.C. § 207(a)(1) in failing to pay Plaintiff overtime wages.

64.    Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

65.    An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

66.    Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

67.      Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct."  *Martin*, 949 F.2d at 1299.

68.      The willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

69.      Defendants cannot meet the burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's rights.  This is demonstrated by their willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

70.      Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

71.      As a direct and proximate result of the conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO REMIT OVERTIME WAGES IN
## VIOLATION OF THE MWA
## 43 Pa. Stat. § 333.101, *et seq.*

72.      Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

73.      The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  See 43 P.S. § 333.104.

74.    Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." 43 P.S. § 333.104(c).

75.    Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

76.    Analogous to the case law interpreting the FSLA, the definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the FLSA.  See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

77.    As previously averred, and for the same reasons JMO is an "employer" for purposes of the FLSA, JMO is also an "employer" for purposes of the MWA.

78.    In addition, JMO is a corporate entity organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of JMO, within the state of Pennsylvania.

79.    As allege hereinabove, and for the same reasons the Mr. and Mrs. Moore are "employer[s]" for purposes of the FLSA, and Mr. and Mrs. Moore are also an "employer" for purposes of the MWA.

80.    The MWA defines "employee" to include "any individual employed by an employer."  43 P.S. § 333.103(h).

81.     In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

82.     In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. Ct. 2003).

83.     As previously averred, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

84.     Consequently, given the status of Defendants as "employer[s]," and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime wage requirements of the MWA.

85.     However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the overtime hours that he worked.

86.     As such, Defendants violated the MWA, namely 43 P.S. § 333.104(c).

87.     In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA.  43 P.S. § 333.113.

88.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses.

89.     As a direct and proximate result of the conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## FAILURE TO REMIT WAGES IN
## VIOLATION OF THE WPCL
## 43 P.S. § 260.1 *et seq.*

90.     Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

91.     The WPCL provides the employee with a statutory remedy to enforce its rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

92.     The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.*, citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

93.     This statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

94.     The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

95.     Defendants are a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

96.     As averred above, and for the same reasons Defendants are an "employer" for purposes of the FLSA and the MWA, Mr. Moore and Mrs. Moore are also "agents" or "officers" of JMO and, thus, are an "employer" for purposes of the WPCL.

97.     As averred repeatedly throughout this Complaint, JMO, acting by and through the Mr. Moore and Mrs. Moore, and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee."  This factual reality remains true for purposes of the WPCL as well.

98.     The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

99.     Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendants in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

100.    Defendants have not asserted a dispute over the wages due and owing to Plaintiff and has not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

101.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

102.    Defendants' Established Payday Procedure was the disbursement of employee pay on a bi-weekly basis.

103.    Section 260.10 of the WPCL permits an award of liquidated damages equal to 25% of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within 30 days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.  43 P.S. § 260.10.

104.    Accordingly, per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for 30 days beyond Defendants' Established Payday Procedure.

105.    By omission, Defendants have refused to pay Plaintiff all wages due and owing to him well beyond 30 days of the date of the Established Payday Procedure.

106.    As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendants' implementation and utilization of the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Paycheck Time Deduction Practice.

107.    To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff.  As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

108.    Additionally, Defendants  have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

109.    The actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

110.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

111.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees. 43 P.S. § 260.9a(f).

112.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing the conduct described hereinabove.

113.     As a direct and proximate result of the conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.


### COUNT IV
### BREACH OF CONTRACT IN VIOLATION OF
### PENNSYLVANIA COMMON LAW

114.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

115.    To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

116.    In a bona fide contractual offer, Defendants extended Plaintiff the opportunity to exchange his time and efforts, within the context of gainful employment with Defendants, for, amongst other things, a designated rate of $30.00 per hour.

117.    Plaintiff conveyed his acceptance of Defendants' offer(s), mentioned directly above, implicitly, by and through his course of conduct and/or, expressly, by way of a written instrument.  In particular, Plaintiff and Defendants reached a manifestation of assent when Plaintiff performed work for Defendants and/or when Plaintiff signed the Employment Contract.

118.    Consequently, the Employment Contract was formed between Plaintiff and Defendants, and Defendants assumed the contractual obligation to pay Plaintiff $30.00 per hour worked.

119.    As a matter of contract law, the mandates of the FLSA and/or the MWA were incorporated into the Employment Contract and the overtime rate of pay became legally binding on Defendants as a matter of contract law.  See *DePaul v. Kauffman*, 272 A.2d 500, 506 (Pa. 1971).

120.    However, as alleged in the Complaint hereinabove, Defendants, by omission and as a result of the 41 to 50 Hours Workweek Overtime Deduction Practice, the 50 Plus Hour Workweek Overtime Deduction Practice, and the Final Paycheck Time Deduction Practice, failed to pay Plaintiff at the applicable overtime rate of pay and/or his standard rate of pay.

121.     The actions described hereinabove were the direct and proximate cause that resulted in breaches of the employment contract, deprived Plaintiff of his entitlement to accrued pay, and resulted in lost wages.

122.    As a direct and proximate result of the conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.


**COUNT V**
**UNJUST ENRICHMENT IN VIOLATION OF**
**PENNSYLVANIA COMMON LAW**

123.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

124.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the

value of the benefit conferred. *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003), *citing Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995).

125.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).

126.    Plaintiff conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendants' business.

127.    Indeed, Plaintiff's performance of work hours to which he never received his agreed upon compensation rate, or the statutorily required overtime rate of pay, as detailed and described above, constitutes a benefit that was directly conferred to Defendants.

128.    Defendants retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

129.    By accepting Plaintiff's labor and services and failing to pay Plaintiff at the overtime rate of pay and/or his regular rate of pay, Defendants have been unduly enriched.

130.    As a matter of justice and fairness, it would be manifestly unjust and inequitable for Defendants to retain the benefit of the above-mentioned labor and services hours without paying Plaintiff due compensation.

131.    Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

132.    As a direct and proximate result of the conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

For the above-stated reasons, Plaintiff, Dominic Perry, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendants,  JMO Roll-Off, Marylou Moore, and Barry Moore, and prays for relief as follows:

1.    Declare and find that Defendants committed one or more of the following acts:

i.    Violated provisions of the FLSA by failing to pay Plaintiff overtime wages and did so willfully;

ii.    Violated provision of the MWA in failing to pay Plaintiff overtime wages and did so willfully;

iii.    Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

iv.    Breached its employment contract with Plaintiff in failing to compensate Plaintiff in accordance with terms of the contract;

v.    Was unjustly enriched at Plaintiff's expense and unlawfully retained a benefit without paying for its value; and

2.   Award unpaid overtime wages, minimum wages, and unpaid wages at Plaintiff's contractual hourly rate, and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

3.   Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

4.   Award contractual damages as a result of Defendants' breach of contract;

5.   Award pre-judgment and post-judgment interest where accorded by law;

6.   Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

7.   Award injunctive and other equitable relief as provided by law;

8.   Grant leave to amend to add claims under state and federal laws; and

9.   Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: May 26, 2023                    By: */s/ Kyle H. Steenland*
                                            Kyle H. Steenland (Pa. I.D. No. 327786)
                                            Jordan M. Kurth (Pa. I.D. No. 317804)

                                            The Workers' Rights Law Group, LLP
                                            Foster Plaza 10
                                            680 Andersen Drive, Suite 230
                                            Pittsburgh, PA 15220
                                            Telephone: 412.910.9592
                                            Fax: 412.910.7510
                                            kyle@workersrightslawgroup.com
                                            jordan@workersrightslawgroup.com

## **VERIFICATION**

I, Dominic Perry, have read the foregoing Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

_____
Date

_____
Dominic Perry